COMMONWEALTH *vs.* ROBERT P. BROOKS.

Norfolk.    October 7, 1974. — November 29, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Evidence,* "Breathalyzer" test. *Words,* "Percentage, by weight."

Discussion of tests to determine levels of intoxication of motor vehicle operators. [426-427]

In the provision of G. L. c. 90, § 24 (1) (e), relating to the use of "evidence of the percentage, by weight, of alcohol in the . . . blood . . . [of an operator of a motor vehicle] as shown by chemical test or analysis of his blood or . . . breath," the phrase "percentage, by weight" means a "weight/volume" ratio expressed as the number of grams of alcohol per 100 cubic centimeters, or milliliters, of blood, and where the percentage readings indicated on a breathalyzer machine used in a test of a motor vehicle operator made with his consent were such ratios, the results of the test were properly admitted in evidence at the trial of the operator on the charge of operating while under the influence of intoxicating liquor in violation of § 24 (1) (a). [428-433]

COMPLAINT received and sworn to in the District Court of East Norfolk on March 13, 1973.

Upon appeal to the Superior Court, a pre-trial motion to suppress evidence was heard by *Snow, J.*, a District Court judge sitting under statutory authority, and the case was tried before him.

*James A. Shannon* for the defendant.

*George G. Burke,* District Attorney, for the Commonwealth, submitted a brief.

QUIRICO, J.  This case brings before us exceptions taken to the admission of breathalyzer test results in a prosecution resulting in the conviction of the defendant for operating a motor vehicle while under the influence of intoxicating liquor (under the influence). G. L. c. 90, § 24 (1) (a). At the trial de novo in the Superior Court, evidence was admitted over the defendant's objection showing the results of a breathalyzer test which had been taken with the defendant's consent at the time of his arrest. He now seeks a new trial, alleging that it was error to permit the jury to receive and consider the breathalyzer evidence in the form in which it was introduced.[1]

General Laws c. 90, § 24 (1) (e), inserted by St. 1961, c. 340, permits introduction of "evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, as shown by chemical test or analysis of his blood or . . . breath . . . ." The statute establishes a series of presumptions[2] which vary with the blood alcohol concen-

---

[1] We should point out that the record before us contains no information as to what the results of the defendant's breathalyzer test were, nor does it contain any statement as to how the trial judge instructed the jury to apply those results. The record fails to show, therefore, whether the error below, if any, was harmful to the defendant. While we agree with the Commonwealth that the party seeking review has the burden of including all pertinent information in the bill of exceptions so as to enable the court to avoid resort to speculation concerning the facts, *Commonwealth* v. *Rivers,* 307 Mass. 225, 226-227 (1940); *Commonwealth* v. *Bottiglio,* 357 Mass. 593, 597 (1970), we nevertheless feel justified as a practical matter in assuming that the breathalyzer evidence was adverse to the defendant. In any event, we prefer to rest our decision on a consideration of the merits of the defendant's claim.

[2] Although G. L. c. 90, § 24 (1) (e), speaks in terms of presumptions, our decisions in other areas suggest that proof of a defendant's blood alcohol concentration might be better termed prima facie evidence. While this dis-

tration. If this concentration or "percentage" is .05 or less, there is a presumption that the defendant was not under the influence; if the "percentage" is between .05 and .10,[3] there is no presumption; and if the "percentage" is greater than .10, there is a presumption that the defendant was under the influence.

The breathalyzer used to perform the test on the defendant, a Model 900 machine manufactured by the Stephenson Corporation, in the words of the defendant, "purports to measure the percentage of alcohol in the blood by volume." As the defendant acknowledges, G. L. c. 90, § 24 (1) (e), permits the results of breath analysis to be introduced in evidence in prosecutions for driving while under the influence. The statute, however, specifies that "evidence of the percentage, by weight," is what can be admitted. As noted above, the defendant believes and contends that the breathalyzer measures percentage by volume. Arguing that expressio unius est exclusio alterius, see *General Elec. Co.* v. *Commonwealth,* 329 Mass. 661, 664 (1953), the defendant asserts that breathalyzer test results such as those involved in this case are inadmissible because they do not measure "percentage, by weight." We believe that the defendant has misunderstood the meaning of the statute and the workings of the breathalyzer. Clarification of our conclusion necessitates some discussion of both legislative history and principles of chemical analysis.

In this century the automobile has become a major implement of life and death. Recently there have been over 16,000,000 motor vehicle accidents occurring each year,

---

tinction is technical, and frequently ephemeral, it does have some practical effects. See *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 565-567 (1938); *Hobart-Farrell Plumbing & Heating Co.* v. *Klayman,* 302 Mass. 508, 509-510 (1939); *McLean* v. *Medford,* 340 Mass. 613, 616-618 (1960). See generally Leach and Liacos, Handbook of Massachusetts Evidence, 51-62 (1967).

[3] The .10 level of blood alcohol concentration beyond which the presumption arises that the defendant was under the influence was set by St. 1972, c. 488, § 1. Prior to the effective date of that amendment, the cut-off point was .15, a figure set by St. 1961, c. 340. The defendant was arrested when the .15 "percent" figure was in effect, but tried after the .10 figure became effective. It is not indicated in the record whether the higher or lower figure was utilized at the trial. See fn. 1, *supra.*

producing more than 50,000 deaths annually. U. S. Bureau of the Census, Pocket Data Book, U. S. A. 1973, 64, 283 (1973). The relationship between intoxicating liquor and such accidents was recognized early in the age of the automobile. See, e.g., St. 1909, c. 534, § 22, making it a crime to operate an automobile or motorcycle while under the influence. Periodic empirical studies have confirmed the intuitively obvious: persons who drive while under the influence are likely to kill or injure themselves or others. A three year study (1963-1965) of 100 single car fatalities conducted by the Massachusetts State Division of Alcoholism, for example, revealed that over seventy-five per cent of the dead drivers had been drinking. See 1968 Senate Doc. No. 980.

The national attempt to cut down on the incidence of driving under the influence has been impeded by the difficulty of discovering just how much a driver has been drinking. Many of the outward manifestations of intoxication may be symptomatic of nonalcohol related disease or trauma. Newman, Proof of Alcoholic Intoxication, 34 Ky. L. J. 250, 253, nn. 2, 3 (1946). Moreover, the absence of the visible signs of intoxication may also be misleading. For one thing, it is generally recognized that a person's capacity to drive may be impaired at a subclinical stage of intoxication. Watts, Some Observations on Police-Administered Tests for Intoxication, 45 N. C. L. Rev. 34, 48 (1966). For another thing, the experienced, older drinker often has the ability to "pull himself together" when under observation and to hide the signs of his true condition. Erwin, Defense of Drunk Driving Cases (3d ed.) § 9.02 (1974).

Because of these shortcomings in clinical observation, law enforcement authorities enlisted the aid of scientists to develop biochemical analyses which could ascertain levels of intoxication. Since what we term intoxication is simply the effect of alcohol on the brain, brain analysis would produce accurate indicia. Newman, *supra*, at 263. As Dr. Newman points out, however, brain tissue is certainly not readily accessible. Fortunately, several body fluids

have been shown to reflect alcohol consumption relatively faithfully. Along these lines, urine, saliva, spinal fluid, blood, and alveolar (deep lung) breath have all found favor at one time or another as material for alcohol concentration analysis. Blood, for various reasons, first emerged as the analytical material of choice. Newman, *supra,* at 263-266. Later, however, breath tests, which are easier to administer than blood tests, were improved to the extent that they became the most popular means of testing for alcohol levels. Erwin, *supra,* §§ 18.01, 18.02.

In 1939, the National Safety Council and the American Medical Association published reports concluding that particular blood alcohol levels should be considered as evidence presumptive of the presence or absence of the influence of alcohol on driving. The levels established were .05 "percent" or less, which would create a presumption that the defendant was not under the influence, .05 "percent" to .15 "percent," which would create no presumption, and .15 "percent" and above, which would create a presumption that the defendant was under the influence. These reports are discussed, among other places, in Richardson, Modern Scientific Evidence (2d ed.) § 13.1 (1974), and Erwin, *supra,* § 14.02. The findings of the American Medical Association and National Safety Council committees were reflected by the Uniform Vehicle Code, § 11-902 (1952 version), which adopted the .05 and .15 "percent" cut-off figures for the purpose of establishing presumptions regarding the influence of alcohol.[4] This uniform act served as the pattern for legislation in a great many States, including Massachusetts. In fact, 1961 Senate Doc. No. 1589, one of the bills which culminated in St. 1961, c. 340, now G. L. c. 90, § 24 (1) (e), duplicated the provisions of § 11-902 of the uniform code.

The defendant contends that "[t]he words 'percentage, by weight, of alcohol' . . . have a common and approved usage." Cases are cited expressing our rule that statutes

_____

[4] The upper figure was reduced to .10 in 1968. Uniform Vehicle Code, § 11-902 (1968 revision). See fn. 3, *supra,* and accompanying text.

must be construed as written and cannot be rewritten judicially. *Milton* v. *Metropolitan Dist. Commn.* 342 Mass. 222, 227 (1961). *Boylston Water Dist.* v. *Tahanto Regional Sch. Dist.* 353 Mass. 81, 84 (1967). It is apparently the defendant's contention that the words "percentage, by weight, of alcohol in the defendant's blood" denote a ratio formed by dividing the weight of the alcohol by 100 of the same weight units of blood.[5] That is to say that both the dividend and the divisor must be weights expressed in comparable units. Thus, according to this argument, the "percentage, by weight, of alcohol in the . . . blood" could be expressed only as ounces of alcohol/100 ounces of blood, or as milligrams of alcohol/100 milligrams of blood, and so forth.

This argument, however, considers the words "percentage, by weight," alone; such a narrow reading is contrary to our rule of construction that words in a statute must be considered in light of the other words surrounding them. *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 333 (1941). The context in which the words at issue appear includes at least the following: "evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, *as shown by chemical test or analysis of his blood or as indicated by chemical test or analysis of his breath,* shall be admissible and deemed relevant" (emphasis added). Since every phrase of a statute should be given some effect, *Milton* v. *Metropolitan Dist. Commn., supra,* at 225, *Commonwealth* v. *Mercy Hosp.* 364 Mass. 515, 521 (1974), we must ascertain what "percentage, by weight," means as that term is used in connection with chemical tests and analyses of blood alcohol concentrations.

It appears that the concentration of alcohol in biological fluids such as blood is usually expressed as *the weight of alcohol per unit of volume of the fluid.* Alcohol and

---

[5] Literally, of course, "percentage" is a certain rate per cent, and "percent" comes from the Latin "per centum," indicating a reckoning in the hundred. Webster's Third New Intl. Dictionary (1961) 1675.

Commonwealth *v.* Brooks.

Highway Safety, A Report to the Congress from the Secretary of Transportation, U. S. Department of Transportation (1968) (hereinafter D. O. T. Report), in Drunk Driving Cases: Prosecution and Defense 148-149 (Freeman ed. 1970). Erwin, *supra,* § 15.04. Watts, *supra,* at 50-51, fn. 53. One of several such weight/volume ratios is expressed as the number of grams of alcohol per 100 cubic centimeters, or milliliters, of blood. This ratio is "usually referred to simply as the percent of alcohol in the blood." Erwin, *supra,* § 15.04. We believe this is the ratio required by § 24 (1) (e) and by the comparable statutes in other jurisdictions.[6]

---

[6] Most State statutes permitting introduction of blood alcohol test results in evidence in driving under the influence cases utilize the "percentage, by weight," terminology. See Ala. Code Anno. Tit. 36, § 155, cl. 4 (Supp. 1973); Alaska Sts. Anno. § 28.35.033 (3) (b) (1970 and Supp. 1974); Ariz. Rev. Sts. Anno. § 28-692 (1956): Ark. Anno. Sts. §§ 75-1031.1, 75-1046 (Supp. 1973); Colo. Rev. Sts. Ann. § 13-5-30 (1963 and Supps. 1967 and 1971); Conn. Gen. Sts. Anno. § 14-227a (Supp. 1974); Del. Code Anno. Tit. 11, § 3507 (Supp. 1970); Fla. Anno. Sts. § 322.262 (2) (Supp. 1974); Ga. Code Anno. § 68-1625 (b) (Supp. 1973); Hawaii Rev. Sts. § 291-5 (Supp. 1973); Idaho Code Anno. § 49-1102 (Supp. 1973); Ill. Anno. Sts. c. 95 1/2, § 11-501 (c) (Supp. 1974); Kans. Sts. Anno. § 8-1005 (Supp. 1973); Ky. Rev. Sts. Anno. § 189.520 (1971); La. Sts. Anno. § 32:662 (Supp. 1974); Maine Rev. St. Anno. Tit. 29, § 1312 (Supps. 1973 and 1974); Md. Anno. Code, art. 35, § 100 (Supp. 1973); Mich. Comp. Laws Anno. § 257.625a (Supp. 1974); Minn. Sts. Anno. § 169.121 (Supp. 1974); Miss. Code Anno. § 63-11-39 (1972); Mo. Stat. Ann. § 564.442 (Supp. 1974); Mont. Rev. Codes § 32-2142 (Supp. 1974); Neb. Rev. Sts. Anno. § 39-669.07 (1974); Nev. Rev. Sts. § 484.381 (1973); N. H. Rev. Sts. Anno. § 262-A:63 (Supp. 1973); N. J. Sts. Anno. §§ 39:4-50.1 (1973); N. M. Anno. Sts. § 64-22-2.10 (1972); 62A McKinney's Consol. Laws of N. Y. Anno. § 1192 (Supp. 1974); N. C. Gen. Sts. Anno. § 20-139.1 (Supp. 1973); N. D. Century Code Anno. § 39-20-07 (1972); Ohio Rev. Code Anno. § 4511.19 (1973); Okla. Sts. Anno. c. 47, § 756 (Supp. 1973); Ore. Rev. Sts. § 483.642 (1974); Pa. Sts. Anno. Tit. 75, § 624.1 (Purdon Supp. 1971); R. I. Gen. Laws Anno. § 31-27-2.1 (Supp. 1973); S. C. Code Anno. § 46-344 (Supp. 1973); S. D. Comp. Laws Anno. § 32-23-7 (1967 and Supp. 1974); Tenn. Code Ann. §§ 59-1046, 59-1047 (Supp. 1974); Texas Rev. Civ. Sts. Anno. art. 6701l-5 (Supp. 1974-1975); Utah Code Anno. § 41-6-44 (1970); Vt. Sts. Anno. Tit. 23, § 1204 (Supp. 1974); Va. Code Anno. § 18.1-57 (Supp. 1974); Wash. Rev. Code § 46.61.506 (Supp. 1972); W. Va. Code Anno. § 17C-5A-5 (Supp. 1974); Wis. Sts. Anno. § 885.235 (1966 and Supp. 1974); Wyo. Comp. Sts. Anno. § 31-129 (Supp. 1973).

Many of these enactments leave the term "percentage, by weight," undefined. The above cited Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Illinois, Louisiana, Minnesota, Mississippi, Missouri, Montana, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Vermont, Washington, West Virginia, and Wyoming statutes, however, do specifically provide that the term means grams or milligrams of alcohol per 100 milliliters or cubic centimeters of blood, i.e., that the term denotes a weight/volume ratio. Apparently no statute defines "percentage, by weight," as a weight/weight ratio.

In medical and other scientific usage, the concentration of alcohol in the blood is frequently expressed as milligrams of alcohol per 100 milliliters of fluid. D. O. T. Report, in Freeman, *supra,* at 148-149. This, of course, is still a weight/volume relationship and, since a milligram is simply a thousandth of a gram, is functionally equivalent to the per cent by weight usage found in most statutes. Thus, for example, 50, 100, and 150 mg. of alcohol per 100 milliliters of blood can be expressed, respectively, as .05, .10, and .15 per cent by weight. D. O. T. Report, in Freeman, *supra,* at 148-149.[7]

The legislative background of § 24 (1) (e) further supports the position that the phrase "percentage, by weight, of alcohol in the . . . blood" actually indicates a weight/volume relationship. As noted above, this section was partially based on a portion of the Uniform Vehicle Code. The pertinent section of that code provided for a series of presumptions based on the "percent by weight of alcohol in the blood." In explaining the meaning of these words, the code now provides as follows: "Percent by weight of alcohol in the blood shall be based upon grams of alcohol per 100 cubic centimeters of blood." Uniform Vehicle Code, § 11-902 (b), subparagraph 4 (1968 Rev.). We are aware that this clarification was added to the uniform code after our statute was enacted and, of course, that it has not been added to our statute. Nevertheless, we feel that it is indicative of what the code drafters meant in the first place. Additionally, it is significant that the code was, as noted earlier, itself based partly on the 1939 recommendations of the National Safety Council. Profes-

---

[7] It appears that the use of weight/volume ratios to express blood alcohol concentrations is not confined to the United States, but is an international methodology. See, e.g., Hagan and Osborough, The Drinking Motorist and the Road Traffic Act (N. I.) 1964, 18 No. Ireland Legal Q. 395 (1967), in Freeman, *supra,* at 1167, 1184 ("In this country the concentration is usually expressed in milligrammes of alcohol per 100 millilitres of blood [mg/100 ml.])," Norman, Road Traffic Accidents — Epidemiology, Control and Prevention, World Health Organization Public Health Paper #12 (1962), in Freeman, *supra,* at 1019, 1077, et seq. (expressing blood alcohol test result figures from many countries, all in milligrams/100 milliliters).

sor R. N. Harger, an original member of the committee which drafted those recommendations, and the inventor of one of the first widely used breath testing devices stated that "in this country we measure samples of body fluids *by volume* and not by weight, and the results [of blood alcohol tests] are usually given as weight-volume and not weight-weight." Harger, Medicolegal Aspects of Chemical Tests of Alcoholic Intoxication, J. of Crim. L., Criminology and Police Science, 402 (1948).

The distinction between the lay and scientific interpretations of "percentage, by weight," and the confusion caused by this distinction are well pointed out in Watts, *supra*, at 50, fn. 53: "For those expecting to delve into the technical literature concerning chemical testing, a note is in order concerning methods of expressing the amount of alcohol that is in the blood. The text of this article and most American statutes speak of 'percentage' of alcohol in the blood, although this may mislead persons not familiar with laboratory terminology. A laboratory practice widely followed in this country and elsewhere for expressing solution strengths when small quantities of a liquid or a solid are dissolved in a relatively large amount of a liquid is to express the solution strength on a weight/volume basis. The reason for this is that measurement by weighing is the only accurate way to quantify extremely small amounts of a substance. Expensive analytical balances in laboratories, kept free of dust in glass cases, are capable of precisely determining weight even down to the fraction of a milligram. For the liquid, however, the most convenient method of measurement is volumetric. . . . As the pioneering blood-alcohol laboratory reports and studies used the weight/volume quantification, it inevitably happened that the blood-alcohol 'percentage' figures seized upon by the nonexpert lawyers, legislators, and traffic safety enthusiasts were in fact the weight/volume percentage figures. All the widely-used testing instruments that report in terms of 'percentage' or 'percentage by weight' of alcohol in the blood actually utilize the weight/volume percentage quantification. It can be safely assumed in the entire field

of chemical testing that, unless the contrary is indicated, all blood-alcohol percentage figures express weight/volume relationships."

We conclude from the foregoing authorities that blood alcohol analysts follow a widespread and long-standing scientific usage of expressing their results in weight/volume terms. We conclude further that the words "percentage, by weight," of alcohol in the blood in technical terminology indicate the number of grams of alcohol in 100 milliliters or cubic centimeters of blood. Watts, *supra,* at 97. Erwin, *supra,* § 15.04. We have every reason to assume that the Legislature in adopting § 24 (1) (e) intended to incorporate this existing technical meaning of "percentage, by weight." Cf. *Hein-Werner Corp.* v. *Jackson Indus. Inc.* 364 Mass. 523, 527-528 (1974). If the section were interpreted to follow lay usage and to require weight/weight test results, more-over, it would add another step to existing computations. The volume of blood, expressed generally in milliliters or cubic centimeters would have to be converted into milli-grams by means of a factor based on the specific gravity of blood.[8] Because this figure is normally about 1.055, the conversion would reduce the "percentage" reading by about five per cent in the defendant's favor, e.g., from .20 to .19 or from .10 to .095. Watts, *supra,* at 97. Harger, *supra,* at 402. However, the "[s]pecific gravity of human blood *varies* from 1.048 to 1.066." *State* v. *Hendel,* 468 S. W. 2d 664, 667, fn. 3 (Ct. App. Mo. 1971) (emphasis added). Thus, to require that weight/volume test results be converted into weight/weight terms would (a) demand an additional computation beyond any made in ordinary chemical analyses; (b) produce only marginal changes in the blood alcohol percentages admitted; and (c) introduce an aver-aging factor, the specific gravity of blood, which, because an average ignores individual variations, will incorporate an otherwise avoidable margin of error in the test results.

---

[8] The specific gravity of a liquid is the ratio of the weight of any volume of the liquid to the weight of an equal volume of water. Webster's Third New Intl. Dictionary (1961) 2187.

For us to adopt such an impractical requirement would violate our obligation to interpret a statute, if possible, so that it "may be effectual for the purpose for which it was enacted." *A. Belanger & Sons, Inc.* v. *Joseph M. Concannon Corp.* 333 Mass. 22, 25 (1955). Since we believe § 24 (1) (e) was enacted for the purpose of allowing the admission in evidence of the most readily available and most accurate readings of blood alcohol levels, effectuation of that purpose requires that weight/volume measurements be admissible. In sum, every consideration we have made contributes to the conclusion that "percentage, by weight, of alcohol in the . . . blood" means the number of grams of alcohol found in 100 milliliters or cubic centimeters of blood.

Once it is decided that the above interpretation is to be applied, it merely remains to be made certain that the Stephenson Model 900 produces readings which are in accordance therewith. The defendant has contended that this machine "purports to measure the percentage of alcohol in the blood by volume." We construe this as an assertion that the machine measures the volume of alcohol per 100 units of volume of blood. Such is not the case. The percentage readings on the breathalyzer dial, calibrated in per cent blood alcohol, are actually weight/volume ratios such as those our previous discussion indicates are ordinarily used in chemical analyses. The theory and performance of the breathalyzer are discussed at some length in Erwin, *supra,* §§ 22.01-22.09, and in Watts, *supra,* at 64-68.[9] The readings from the test performed on the defendant were, therefore, properly admitted by the trial judge without a conversion of those readings into a weight/weight relationship. Indeed, we believe that evidence consisting of such weight/weight ratios is not admissible at all under our statute as we construe it.

Finally, we wish to make clear that we are aware of cases

---

[9] Watts, *supra,* at 68, fn. 100, refers to Borkenstein, Breathalyzer Model 900 Instruction Manual (1968). This manual details the procedures to be followed in the operation of the machine.

in other jurisdictions which, although not cited by the parties in their briefs, have reached results dissimilar to ours by either construing "percentage, by weight," to mean weight/weight, or by interpreting the breathalyzer machine results as expressing volume/volume ratios, or by doing both. See, e.g., *State* v. *Corsiglia,* 435 S. W. 2d 430 (Ct. App. Mo. 1968); *State* v. *Carwile,* 441 S. W. 2d 763 (Ct. App. Mo. 1969); *State* v. *Rodell,* 17 Wis. 2d 451 (1962). See also *Kettering* v. *Baker,* 34 Ohio Misc. 7 (1973). The *Corsiglia* and *Carwile* cases, however, are easily distinguishable because at the time they were decided Missouri had a statute, Mo. Stat. Ann. § 564.442, which provided in part: "per cent by weight of alcohol in the blood shall be based upon milligrams of alcohol per one hundred *milligrams* of blood" (emphasis added). This statute, apparently taken from the Uniform Chemical Test for Intoxication Act, § 7 (d), 9 U. L. A. 68 (Supp. 1967), has since been amended and now provides that "per cent by weight shall be based upon milligrams of alcohol per one hundred *milliliters* (i. e., 100 cc.) of blood." *State* v. *Sinclair,* 474 S. W. 2d 865, 869, nn. 6, 7 (Ct. App. Mo. 1971). The *Rodell* and *Kettering* cases similarly cannot be considered truly contrary to our decision today since neither actually turned on a determination of the weight versus volume problem. In any event, to the extent that any of these cases reaches conclusions which are, in fact, contrary to our construction of "percentage, by weight," we do not follow them based on the foregoing analysis.

*Exceptions overruled.*