OPINION OF THE COURT
Donald J. Mark, J.
The defendant, who is charged with operating a motor vehicle while under the influence of alcohol or drugs as a felony in violation of Vehicle and Traffic Law § 1192 (2), makes this application pursuant to CPL 710.20 (5) to suppress the results of a chemical analysis of his blood upon the ground that 10 NYCRR 59.1 (b) and 59.2 (a) conflict with Vehicle and Traffic Law § 1192 (2).
Section 1192 (2) provides as follows: "No person shall operate a motor vehicle while he has .10 of one per centum or more by weight of alcohol in his blood as shown by chemical analysis of his blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this chapter.”
Section 1194 (3) (c) provides as follows: "The commissioner shall promulgate such rules and regulations as may be necessary to effectuate the provisions of subdivisions one, two and three of this section.”
10 NYCRR 59.1 (b) provides as follows: "Per centum by weight of alcohol as used in the Vehicle and Traffic Law * * * shall mean percent weight per volume, that is, grams of alcohol per 100 milliliters of whole blood.”
10 NYCCR 59.2 (a) provides as follows: "All blood and urine alcohol determinations shall be made by quantitative methods and expressed in grams percent or as equivalent to grams of alcohol per 100 milliliters of whole blood”.
The defendant claims that since section 1192 (2) requires that blood alcoholic content be measured by weight and the Commissioner’s rules and regulations provide for measurement of blood alcoholic content by volume, the rules and regulations are inconsistent with the statute and, therefore, illegal. The defendant further claims that as a consequence the test results were obtained from him improperly and should be suppressed. The prosecution responds that the Commissioner acted within the scope of his authority in promulgating "volume” as the referent to "weight”.
This ingenious argument advanced by the defendant has not *496 been the subject of any published decision in this State,[1] and as such it merits consideration.
There should be some preliminary discussion of the principles of chemical analysis relative to weight-to-weight measurement of blood alcohol content and weight-to-volume measurement of blood alcohol content before any conclusion as to the validity of the defendant’s assertion is reached.
A laboratory practice widely followed in this country for expressing solution strengths when a small quantity of a liquid is dissolved in a relatively large amount of liquid is to express the solution strength on a weight/volume basis. The reason for this is that measurement by weighing is the only accurate way to quantify extremely small amounts of a substance. The most straightforward method of expressing solution strength is to put it simply in terms of the number of milligrams of the substance per 100 milliliters of solution. A shorthand expression that developed is the use of a conventional weight/volume percentage figure in which the specific gravity of the weighed substance and the solvent would be disregarded. In establishing this 1 to 100 relationship, the metric system’s point of conversion from weight to volume has been utilized. In the metric system 1 cubic centimeter (1 milliliter, for all practical purposes) of water has a mass of 1 gram. Thus, 1 gram of substance per 100 milliliters of solution would represent 1 weight part in enough solvent to make a volume of 100, which would be a 1% solution. The best method of expressing this quantification is to assume the blood has been tested and there is found in it 180 milligrams of alcohol (weight) per 100 milliliters of blood (volume). This amount of alcohol in the blood would be .18% (Watts, Some Observations of Police-Administered Tests for Intoxication, 45 NC L Rev 34, 50, n 53).
A requirement that weight/weight test results be utilized instead of weight/volume tests would add another step to existing computations. The volume of blood, expressed generally in milliliters or cubic centimeters, would have to be converted into milligrams by means of a factor based on the specific gravity of blood. The specific gravity of a liquid is the ratio of the weight of any volume of the liquid to the weight of an equal volume of water. Because this figure for blood is *497 normally about 1.055, the conversion would reduce the percentage reading of the alcoholic content of the blood by about 5% in a defendant’s favor, e.g., from .20 to .19. However, the specific gravity of human blood varies from 1.048 to 1.066. Thus, to require the weight/volume test results to be converted into weight/weight terms would (a) demand an additional computation beyond any made in ordinary chemical analyses; (b) produce only marginal changes in the blood alcohol percentages admitted; and (c) introduce an averaging factor, the specific gravity of blood, which, because an average ignores individual variations, will incorporate an otherwise avoidable margin of error in the test results (Commonwealth v Brooks, 366 Mass 423, 319 NE2d 901).[2]
Since blood alcohol analysts have followed a widespread and long-standing scientific usage of expressing their results in weight/volume terms (Commonwealth v Brooks, supra), and since the validity of the chemical test and the admission of the test results into evidence are determined by their accuracy and reliability as determined by resort to generally accepted scientific standards (People v Jones, 118 Misc 2d 687; People v Meikrantz, 77 Misc 2d 892), this should be a sufficient ground for rejecting the defendant’s claim.
However, additional support for the acceptance of the weight/volume measurement is discovered in two decisions of our sister States where attacks against statutes similar to ours were unsuccessful (Commonwealth v Brooks, supra; City of Monroe v Robinson, 316 So 2d 119 [La]).
The exact issue presented here was decided in Commonwealth v Brooks (supra). The defendant in that case contended that the breathalyzer measured percentage by volume, and the test results were inadmissible because not measured in percentage by weight. The statute involved was comparable in terminology to section 1192 (2).[3] It was the defendant’s contention that the words "percentage, by weight, of alcohol in the *498 defendant’s blood” denote a ratio formed by dividing the weight of the alcohol by 100 of the same weight units of blood. The court found that this interpretation of the statute was too narrow, because words in a statute must be considered in light of the other words surrounding them,[4] because the concentration of alcohol in biological fluids such as blood is usually expressed as the weight of alcohol per unit of volume of the fluid in medical and scientific usage, because of the legislative background of the section involved and because most States, including New York, use the weight/volume ratio which is expressed in the number of grams of alcohol per 100 milliliters of blood.[5] It concluded that weight/volume measurements are admissible as the most readily available and most accurate readings of blood alcohol levels.
City of Monroe v Robinson (supra), by implication, is in accord with the construction that weight of alcohol in the blood means a measurement of weight to volume. Louisiana Revised Statutes Annotated § 32:662 (A) (1) (c) provided that "If there was at that time 0.10 per cent or more by weight of alcohol in the person’s blood, it shall be presumed that the person was under the influence of alcoholic beverages”, and subdivision (B) provided that "Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood”.[6] The defendant contended that the chemical test results should be inadmissible because they were not reported in terms of "grams of alcohol per one hundred cubic centimeters of blood”. The Supreme Court of Louisiana was not impressed with this argument and held that it was not error to allow the operator of the instrument to testify that the results of the test were measured in percent by weight of alcohol in the blood. It further determined that subdivision (B) was not a technical evidentiary requirement but rather was an explanation of the meaning of "percent by weight of alcohol in the blood”. Therefore, since our rules are consonant with the Louisiana statute (see, *499 n 6, supra), that case buttresses the proposition that the word "weight” in section 1192 (2) is the equivalent of sanctioning the weight/volume standard.
Accordingly, the application of the defendant to suppress the results of the chemical test upon that ground that the rules and regulations of the Commissioner conflict with the statute is denied.

. The prosecutor advises that in this county there were oral decisions and one terse written decision denying similar motions by the same attorney.

. The defendant here advanced the argument that the weight/volume standard produces a higher reading of the blood alcohol content than the weight/weight standard, but this case delineates the reasons why this argument is of little validity.

. Massachusetts General Law, ch 90, § 24 (1) (e) provides as follows: "In any prosecution for a violation of paragraph (a) of this subdivision, evidence of the percentage, by weight, of alcohol in the defendant’s blood at the time of the alleged offense, as shown by chemical test or analysis of his blood or as indicated by chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor”.

. That court relied upon the language "as shown by chemical test or analysis of his blood * * * [or] breath”. Note the similarity to the terminology in Vehicle and Traffic Law § 1192 (2).

. Both 10 NYCRR 59.1 (b) and 59.2 (a) refer to "grams of alcohol per 100 milliliters of whole blood”.

. Both 10 NYCRR 59.1 (b) and 59.2 (a) refer to "grams of alcohol per 100 millimeters of whole blood”. In the metric systems 1 cubic centimeter equals 1 milliliter (Watts, Some Observations on Police-Administered Tests for Intoxication, 45 NC L Rev 34). Thus, our statute and the Louisiana statute are virtually identical.