Brent RICKSTREW, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Antonino GONZALES, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Nos. 90SC617, 90SC616.

Supreme Court of Colorado,
En Banc.

Nov. 25, 1991.

Rehearing Denied Jan. 13, 1992.

David F. Vela, Colorado State Public Defender, Jenine Jensen, Joan E. Mounteer, Deputy State Public Defenders, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

In these cases, the defendants claim that a section of Colorado's vehicular homicide statute, prior to its amendment in 1989, was vague and therefore void under the due process clauses of the Colorado and United States Constitutions. Gonzales failed to preserve the void for vagueness issue at trial; we therefore dismiss the writ of certiorari as improvidently granted in

his case.[1] As to Rickstrew, because we find no infirmity in the statute, either facially or as applied to him, we affirm the court of appeals.

## I.

In February 1988, Rickstrew was convicted by a jury of vehicular homicide and leaving the scene of an accident resulting in death under sections 18–3–106, 8B C.R.S. (1986) and 42–4–1401, 17 C.R.S. (1984). In September of 1987, while driving a van, Rickstrew struck and killed a state trooper who was standing on Interstate 25 handling another traffic matter. The defendant's blood alcohol level was tested twice after the incident by a process called gas chromatography. The process measures grams of alcohol per 100 milliliters of blood, *i.e.*, alcohol weight per blood volume. In these two tests, Rickstrew's blood alcohol levels measured .252 and .216 respectively. Before trial, the defendant moved to suppress all evidence relating to the administered blood alcohol tests on the ground that the then vehicular homicide statute was unconstitutionally vague because it provided no ascertainable standard by which to measure blood alcohol level. The trial court denied the motion. Rickstrew was sentenced to sixteen years imprisonment. The court of appeals affirmed Rickstrew's convictions. *People v. Rickstrew*, 88CA0610 (Colo.App. August 9, 1990) (not selected for publication). We granted certiorari to decide the constitutional challenge.

## II.

The statute applied to the defendant, section 18–3–106, 8B C.R.S. (1986), then provided in relevant part:

(1)(b)(I) If a person operates or drives a motor vehicle while under the influence of any drug or intoxicant and such conduct is the proximate cause of the death

of another, he commits vehicular homicide. This is a strict liability crime.

(2) In any prosecution for a violation of subsection (1) of this section, the amount of alcohol in the defendant's blood at the time of the commission of the alleged offense, or within a reasonable time thereafter, as shown by chemical analysis of the defendant's blood, urine, or breath, shall give rise to the following presumptions:

(c) If there was at such time *0.10 percent or more by weight of alcohol in the defendant's blood*, it shall be presumed that the defendant was under the influence of alcohol.

The highlighted provision is the focus of the defendant's constitutional arguments.

The defendant claims that the "percent by weight" provision is facially vague because it fails to specify the exact methodology of the test which results in triggering the presumption of intoxication. The defendant also argues that a subsequent amendment to the vehicular homicide statute is further indication of the former statute's facial vagueness. Finally, the defendant argues that the statute was unconstitutional as applied to him because the statutory presumption of his intoxication arose from its vague language. We are not persuaded by the defendant's arguments.

## III.

### A.

Before analyzing Rickstrew's arguments, we will review briefly the guiding principles of statutory construction. When a penal statute is at issue, "the due process clauses of the federal and Colorado constitutions require articulation of definite and precise standards capable of fair application by judges, juries, police and prosecutors." *People v. Norman*, 703 P.2d 1261, 1266 (Colo.1985). Due process also requires that a penal statute provide fair

---

**1.** *See People v. Martinez*, 634 P.2d 26, 32 (Colo. 1981) (appellate review precluded if party failed to challenge constitutionality of statute in trial court). Gonzales's convictions were affirmed by the court of appeals. *People v. Gonzales*, 88CA1803 (Colo.App. August 2, 1990) (not select-

ed for publication). In both cases now before us the court of appeals declined to consider the constitutional issue because it lacked jurisdiction to do so under its authorizing statute. § 13–4–102(1)(b), 6A C.R.S. (1987).

warning of the conduct prohibited. *People v. Stevens,* 761 P.2d 768, 771 (Colo.1988). We are also aware that penal "statutes are to be strictly construed in favor of a defendant." *People v. Hale,* 654 P.2d 849, 850 (Colo.1982).

■ However, "the rule of strict construction of criminal statutes should not be used to defeat the evident intention of the legislature." *People v. District Court,* 713 P.2d 918, 922 (Colo.1986). Our task "is to ascertain and effectuate the intent of the General Assembly." *In Interest of R.C.,* 775 P.2d 27, 29 (Colo.1989). Indeed, in *Beth Israel Hosp. v. District Court,* 683 P.2d 343, 345 (Colo.1984), we held that legislative intent is "the polestar of statutory construction." [2]

■ Moreover, all statutes, including penal statutes, "are presumed to be constitutional, and the burden is on the party challenging its validity to prove unconstitutionality beyond a reasonable doubt." *People v. McBurney,* 750 P.2d 916, 920 (Colo. 1988). [3] "When a statute is challenged on grounds of vagueness, courts will attempt to construe the legislation in a manner which will satisfy constitutional due process requirements, if [a] reasonable and practicable construction of the statute will achieve such result." *People v. Rostad,* 669 P.2d 126, 127 (Colo.1983). In sum, there is "no yardstick of impermissible indeterminacy" in a statute, and the inquiry here must be "evaluative rather than mechanistic." [4]

**B.**

■ Rickstrew argues that the statute did not specify the test method which determines the statutory presumption of intoxication and that as a consequence no workable standard was provided for those who enforced and applied it. It is undisputed, however, that the standard method used to test a driver's blood alcohol content is, and was in the defendant's case, the "weight per volume" method which we described in part I of this opinion. The question before us, then, is whether the "weight per volume" tests actually administered by the People comport with the legislative intent of the "percent by weight" test provided in the statute, and whether that "percent by weight" statutory language can mean "weight per volume" without violating due process. [5] We hold, first, that the intent of the "percent by weight" test was the "weight per volume" test and second, that using the "percent by weight" language permissibly could mean the "weight per volume" test.

We first direct our attention to the legislature's intent. In *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 944 (Colo.1985), we held that "if the legislative intent is clear, imprecision of terms does not necessarily result in constitutional deficiency." If the "weight per volume" method in fact was intended by the General Assembly when it legislated "percent by weight," then the prosecutorial practice under the statute was not arbitrary and capricious and thus

2. Under section 2–4–203, 1B C.R.S. (1980), as an aid in determining the intention of the General Assembly, we may consider statutes upon the same or similar subject. Thus, statutes *in pari materia* should be construed together and harmonized if possible. *H.B. and P.B. v. Lake County District Court,* 819 P.2d 499, 502 (Colo. 1991); *People In Interest of D.L.E.,* 645 P.2d 271, 274 (Colo.1982).

3. The burden of establishing constitutionality is on the government in cases involving strict and intermediate scrutiny under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, *see Parrish v. Lamm,* 758 P.2d 1356, 1370 (Colo.1988), and when First Amendment values are implicated, *see Tattered Cover, Inc. v. Tooley,* 696 P.2d 780, 786 (Colo.

1985). *See also San Antonio Independent School District v. Rodriquez,* 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287–88, 36 L.Ed.2d 16 (1973).

4. Jeffries, *Legality, Vagueness, and the Construction of Penal Statutes,* 71 Va.L.Rev. 189, 196 (1985).

5. From a hypertechnical reading of the "percent by weight" language, there is some degree of incongruity between the statute and the tests administered in practice. Technically, the term "percent" requires similar units of measure. *See The Prentice Hall Encyclopedia of Mathematics* 475 (1982) ("A ratio is usually a comparison of *similar measures.*"). The defendant does not rely on this hypertechnical reading of the "percent by weight" language and neither do we.

not unconstitutional as applied to the defendant on this score.

To ascertain the intent of the "percent by weight" language, we may consider the legislative history of the vehicular homicide statute and the problem addressed. *See People v. Davis*, 794 P.2d 159, 180 (Colo. 1990). The statute's subsequent history includes a 1989 amendment which provided that blood alcohol content be measured by the ratio of *grams* of alcohol per one hundred *milliliters* of blood, or weight per volume, with the term "percent" no longer included. *See* § 18–3–106(2)(c), 8B C.R.S. (1991 Supp.). It is this legislative change upon which Rickstrew relies in contending that the pre–1989 statute cannot be interpreted as authorizing the blood alcohol test used in his case.

■ We agree that a statutory amendment generally is intended to change the law, but in this case, we hold that the subsequent amendment clarified rather than changed the statute. *See Davis*, 794 P.2d at 181; *Colo. Div. of Employment v. Parkview Hosp.*, 725 P.2d 787, 792 (Colo. 1986) (rule of construction that when law is amended the intent was to change it is inapplicable when "law is amended to clarify an ambiguity"). That the amendment was a clarification is indicated by the legislative history of a closely related statute. The amended statute now tracks the language of the Driving Under the Influence (DUI) statute, § 42–4–1202(2)(c), 17 C.R.S. (1984 & 1991 Supp.), which provides for a weight per volume measure. The DUI statute itself was amended in 1979 specifically to provide for the "weight per volume" method.[6] Thus, the former "percent by weight" language of the vehicular homicide statute was intended to mean a "weight per volume" measure. The 1989 amendment, far from disapproving the actual practice of "weight per volume" tests, simply made clear that those tests were in fact intended.

The expert who administered the blood tests to the defendant stated that the weight per volume method was "custom" and that it corresponded to the DUI statute. The "weight per volume" method was used in both of the defendant's blood tests, and there is no indication in the record that different methods have been used in other cases under the vehicular homicide statute. The People state, and the defendant does not dispute, that even when the weight per volume results are converted to a percent by weight measure, using the gram weight of 100 milliliters of blood, the test results in Rickstrew's case are still well-above the "0.10" value provided by the former statute. We find therefore that the "weight per volume" tests comport with legislative intent and have been applied in an "evenhanded manner by those responsible for enforcing the law." *People v. Schoondermark*, 699 P.2d 411, 415–16 (Colo.1985).

Next, we direct our inquiry to whether the "percent by weight" language can mean "weight per volume" without offending due process. That is, does the "percent by weight" language sufficiently set the standards which give rise to the statutory presumption? *See Stevens*, 761 P.2d at 771. We find persuasive the analysis in *Commonwealth v. Brooks*, 366 Mass. 423, 319 N.E.2d 901, 904–05 (1974) (evidence based on "weight per volume" test held admissible). In disposing of a challenge to a comparable "percent by weight" statute, the court found that "the concentration of alcohol in biological fluids such as blood is usually expressed as *the weight of alcohol per unit of volume of the fluid.*" *Id.* 319 N.E.2d at 905 (emphasis in original). That is, the ratio of grams of alcohol per milliliters of blood is " 'usually referred to simply as the percent of alcohol in the blood.' " *Id.* (citing Erwin, *Defense of Drunk Driving Cases* § 15.04 (3d ed. 1974)). Furthermore, " '[a]ll the widely-used testing instruments that report in terms of "percentage" or "percentage by weight" of alcohol in the blood actually utilize the weight/volume' " measure. *Id.* at 907 (citing Watts, *Some Observations on Police–Administered*

---

6. According to the legislative history invoked by the defendant, the legislature's intent then was to reduce the risk that such tests administered under the "percent by weight" language of the former DUI statute would be challenged by "sharp" attorneys.

*Tests for Intoxication,* 45 N.C.L.Rev. 34, 50 n. 53 (1966)). From the foregoing, the *Brooks* court concluded, as do we, that the words "percent by weight" commonly indicate a measure of grams of alcohol per one hundred milliliters of blood. Therefore, the former vehicular homicide statute is not vague and does not violate the due process clauses of the United States and Colorado Constitutions.

## IV.

For the foregoing reasons, we uphold the constitutionality of the then vehicular homicide statute.

The judgment is affirmed.

LOHR, J., specially concurs and ERICKSON, J., joins in the special concurrence.

VOLLACK, J., does not participate.

### Justice LOHR, specially concurring:

I agree that in determining whether a presumption that a defendant was under the influence of alcohol arises under section 18-3-106(2)(c), 8B C.R.S. (1986), the statutory standard "0.10 percent or more by weight of alcohol in the defendant's blood" requires a calculation based on grams of alcohol per 100 milliliters of blood. I write separately to emphasize what I believe to be the narrow applicability of the reasoning that produces this seemingly anomalous result.

In construing a statute we must ascertain and give effect to the intent of the legislature. *Kern v. Gebhardt,* 746 P.2d 1340, 1344 (Colo.1987). If the statutory language is clear, we look no further to determine that intent. *Kane v. Town of Estes Park,* 786 P.2d 412, 415 (Colo.1990). Only when the language is ambiguous may we consider extraneous sources, such as legislative history, to arrive at the proper meaning. *Griffin v. S.W. DeVanney & Co., Inc.,* 775 P.2d 555, 559 (Colo.1989).

The term "percent by weight" has a clear, commonly understood meaning. In order for a result expressed as a "percent" to have meaning, the units being compared must be the same. *See* 2 Erwin, *Defense of Drunk Driving Cases* § 15.02 (3d ed. 1991). The majority acknowledges this. Maj. op. at 507 n. 5. "Percent by weight," therefore, clearly denotes a calculation employing the same units of weight for both alcohol and blood. Under normal circumstances it would be indisputable that blood test results expressed as grams (a unit of weight) per 100 milliliters (a unit of volume) do not state a percent by weight. Such a mathematical calculation cannot produce a result that can be properly characterized in terms of "percent."

The "percent by weight" statutory test, however, cannot be divorced from the context for which it was created. Blood-alcohol tests are common, and have been for years, as evidentiary aids in determining whether a person drove a motor vehicle while impaired by alcohol to a statutorily impermissible degree. *See Commonwealth v. Brooks,* 366 Mass. 423, 319 N.E.2d 901, 904 (1974). The usual scientific practice in conducting such tests is to determine grams of alcohol per 100 milliliters of blood. *Id.* 319 N.E.2d at 905; 2 Erwin, *Defense of Drunk Driving Cases* § 15.02. The results of blood-alcohol tests so conducted are typically expressed in "percentage" terms even though "[s]trictly speaking, this [mathematical expression] is not a true percentage by weight of alcohol in the blood. ..." *Id.* Indeed, such testing practice and method of expressing results are commonly adopted by scientists even when the relevant statutes specifically refer to the standard as percent by weight, *see Brooks,* 319 N.E.2d at 905–07 and 905–06 n. 6. This is an area then—hopefully unusual—in which science attaches a meaning to a term different from the clear, common, and technically correct meaning of the words.[1] For the reasons

---

1. To arrive at the meaning ascribed to the term "percent by weight" in scientific practice in conducting blood-alcohol tests, it is necessary not only to conclude that "percent by weight" is to be based on a comparison of weight to volume but that a particular unit of weight (the gram) and a particular unit of volume (the milliliter) are to be employed. Not only that, but the volume to be used is 100 milliliters. Nothing inherent in a "weight per volume" method of

set forth by the majority, I agree that it is this scientific meaning that the legislature intended to adopt in enacting the "percent by weight" standard.

In some circumstances, due process concerns would arise from adopting a statutory construction so at odds with the plain meaning that would be ascribed to the words by persons not acquainted with the scientific usage. I think that is not the case here. Principles used in evaluating void for vagueness challenges to statutes have application by analogy. We have held that a vagueness challenge implicates two constitutional concerns: statutory language must be clear enough to afford a practical guide for law-abiding behavior, and must also provide sufficient guidance to assure that the statute can be enforced in a consistent and even-handed manner. *People v. Schoondermark,* 699 P.2d 411, 415–16 (Colo.1985); *People v. Gross,* 670 P.2d 799, 800 (Colo.1983). It cannot reasonably be believed that the test at issue is one to which persons tailor their conduct. The evidence showed that the grams per 100 milliliters standard produces results that are only slightly higher than a true weight per weight standard. It is simply unrealistic to believe that persons limit their alcohol consumption in a way so finely calibrated as to avoid the presumption under the weight per weight test but sufficient to reach the level that gives birth to the presumption under the weight per volume test. Moreover, the record suggests that testing laboratories have consistently used the grams per 100 milliliters method of expressing blood-alcohol test results for use in Colorado courts. The law has therefore been applied in an even-handed manner. Under the circumstances, the utilization of the grams of alcohol per 100 milliliters of blood standard did not violate defendant Rickstrew's right to due process of law.[2]

expressing blood-alcohol test results requires that weight be measured in grams or volume in 100 milliliter quantities. Only common scientific testing practice supports the use of these units and quantities of weight and volume.

I would explicitly recognize that the adoption of the grams per 100 milliliters standard is not consistent with the plain, common meaning of the statutory language. The construction is proper in these limited and unusual circumstances, however, because it is consistent with legislative intent, comports with scientific usage, and does not infringe upon the due process rights of persons subjected to the test.

I concur in the judgment of the court.

ERICKSON, J., joins in this special concurrence.

**2.** As applied to Rickstrew, both the weight per weight test and the weight per volume test produced a result in excess of that necessary to trigger the statutory presumption. *See* maj. op. at 508.