STATE of Tennessee, Appellee,

v.

Billy Joe McKINNEY, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

July 30, 1980.

Permission to Appeal Denied by Supreme Court Oct. 6, 1980.

Harry A. Wiersema, Jr., Knoxville, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, William P. Sizer, II, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., D. Vance Martin, B. Rex McGee, Asst. Dist. Attys. Gen., Knoxville, for appellee.

## OPINION

DWYER, Judge.

Billy Joe McKinney was convicted of vehicular homicide, T.C.A. § 39–2412, and was sentenced to ten years' imprisonment. He appeals as of right, raising essentially ten issues for review.

On May 22, 1978, at about 2:00 p. m., Glen Webb was driving his school bus south on Norris Freeway in Knox County. As he entered a curve he saw the appellant's truck crossing the center line of the road and coming towards him. Webb steered his vehicle to the shoulder to avoid a collision, but the bus was sideswiped by the appellant's truck. The truck continued on, narrowly missing a car driven by Roy Williams, and struck a car driven by Ed Cooper. The head–on collision killed Mrs. Elizabeth Cooper, a passenger in her husband's car.

An officer investigating the accident testified that the appellant was highly intoxicated and that empty and half–full beer cans were scattered throughout the truck. Both Webb and Williams smelled beer on the appellant, and Williams saw beer cans in his truck and testified that he was intoxicated. A blood sample taken from the appellant showed a blood alcohol content of .28 percent.

The appellant testified in his own behalf that he had drunk two tall cans of beer and was drinking a third when the accident

occurred. He said that he was reaching down to pick up the can of beer which had turned over in the truck when the crash occurred. He claimed not to remember anything else until he arrived at the hospital. On cross–examination he admitted that drinking any alcohol, even one to three cans of beer, has an effect on one's reactions and vision. The appellant called a witness who said that the appellant had been drinking but was not drunk shortly before the accident.

■ Having reviewed this record as required in State v. Cabbage, 571 S.W.2d 832 (Tenn.1978), that is, giving the State the strongest legitimate view of the evidence, we find the evidence sufficient and overrule the appellant's issues challenging its sufficiency. The appellant admitted driving the truck which struck Cooper's car and conceded that he had drunk enough beer to affect him. The evidence clearly shows that he crossed into the southbound lane of traffic and hit Cooper's car head–on, killing Mrs. Cooper. Two State witnesses described him as intoxicated and saw beer cans in his truck. The analysis of his blood sample showed a blood–alcohol content far above the level creating a statutory presumption of intoxication. In view of Mr. Cooper's testimony that the crash killed his wife and Mr. Williams' testimony that the "lady who was in the car was dead," we find no merit in the appellant's suggestion that there was no proof that Mrs. Cooper died as a result of the accident rather than from some other cause.

■ The appellant complains of the failure of the general sessions judge to reduce the testimony at the preliminary hearing to writing. Since he has failed to show any prejudice from such an omission, we find the error to be harmless, Tenn.R.App.P. 36(b), and overrule this issue.

In an issue with many subdivisions the appellant argues that the results of his blood test were improperly admitted into evidence. We note an inherent contradiction between the argument in the first part of this issue and the issue contesting the sufficiency of the evidence. The basis of the appellant's challenge to the evidence was the inadequacy of the State's proof of his intoxication. Here, however, he uses that same proof to bolster his contention that he was too intoxicated to consent to having a blood sample taken.

■ Even considering the merits of this part of the issue, we find no error. The trial court held a full and exhaustive hearing into the admissibility of the results of the blood test and heard testimony by the officer about the appellant's giving his consent, then ruled the results of the test admissible. Although the officer said that the appellant was still highly intoxicated, there is no evidence that he was unconscious or incapable of refusal so as to render the test results inadmissible under T.C.A. § 55–10–406 (formerly § 59–1045).

■ Other sub -parts of this issue question the procedures used to procure and test the blood sample. Contrary to the appellant's position, there is no evidence that T.C.A. § 55 -10--410 (formerly § 59–1049) was not fully satisfied. A registered nurse drew the blood at the request of the investigating officer and signed the standard form. The appellant has not cited any public health department procedure which was not complied with in procuring the sample. The results of the test were certified by the director of the regional crime lab, who testified that he was the duly appointed representative of the chief medical examiner as required in T.C.A. § 55–10–410(b).

■ The appellant argues that the chain of custody of the blood sample was never established and that it was not proved that the sample tested was the one taken from him. The evidence shows otherwise. The investigating officer testified that the nurse took the blood sample at his direction and under his supervision at about 4:30 p. m. on May 22nd and that he saw her seal the vial

of blood in a box. He said that he took the box to the toxicology lab at the University of Tennessee Hospital and gave it to a technician who labeled it and put it in the refrigerator. The toxicologist at the Tennessee Crime Laboratory who analyzed the blood testified that a hospital employee delivered the sample to him at 3:00 p. m. on May 30, 1978. Although there was testimony that an eight–day lapse between receipt of a sample at the toxicology lab and delivery to the crime lab was unusual, there was no evidence that the sample tested was not the sampe drawn from the appellant after the accident. We find that, under *Ritter v. State*, 462 S.W.2d 247, 249–250 (Tenn.Crim. App.1970), the trial court did not abuse its discretion in holding that the chain of custody was properly established.

■ The appellant had no statutory right under T.C.A. § 55–10–410(e) to be advised of his privilege of obtaining a sample of his blood to be tested independently. We reject the argument that it was error for the officer not to inform him of that privilege.

The final portion of the challenge to the admissibility of the blood sample involves the procedure used to analyze the blood. The appellant directs us to T.C.A. § 55–10–408 (formerly § 59–1047) which requires that in order for the results of a blood test to be used to create a presumption of intoxication, the test must measure the percentage of alcohol in the blood by weight. He argues that the results of the test must be expressed in a "weight/weight" ratio, that is, as a comparison of the weight of alcohol to the weight of the blood sample tested. He relies on two Missouri cases, *State v. Corsiglia*, 435 S.W.2d 430 (Mo.Ct.App.1968) and *State v. Carwile*, 441 S.W.2d 763 (Mo. Ct.App.1969). Both of those cases, however, were decided based on a statute (the model for which has since been amended) which required that the percentage of alcohol be expressed in milligrams of alcohol per one hundred milligrams of blood. *Commonwealth v. Brooks*, 366 Mass. 423, 319 N.E.2d 901 (1974).

■ As the Supreme Judicial Court of Massachusetts pointed out in *Brooks*, the standard medical and scientific method of reporting blood–alcohol is a representation of the number of grams of alcohol in one hundred milliliters of blood. The toxicologist who analyzed the appellant's blood sample testified that the result of the test–.28%--represents .28 grams per one hundred milliliters of blood. We find the reasoning of *Brooks* persuasive and refuse to accept the appellant's argument that the standard procedure for reporting blood alcohol tests is improper. We hold that the trial court properly admitted the result of the blood alcohol test into evidence and overrule this issue in its entirety.

■ The appellant raises several issues regarding the trial court's charge to the jury. First, he complains about the instruction that a blood--alcohol content of .10 percent or more "may create an inference" that the person was under the influence of alcohol. He argues that the jury should have been told explicitly that such an inference need not be drawn. Clearly, the use of the word "may" in this instruction conveys precisely the same meaning as the separate instruction the appellate proposed.

■ We also completely reject the appellant's suggestion that the court should not have charged on the presumption of intoxication since there was no evidence of his blood–alcohol level at the time of the accident. It would be virtually impossible for a sample of blood to be drawn until some time after the accident occurs. Here, the jury properly inferred intoxication at the time of the offense from the results of a test of a blood sample taken about two and a half hours later. There is no reason to disturb that inference.

The appellant submitted several special requests for jury instructions involving the statutory requirement that the results of blood tests be expressed in percentages of alcohol by weight. The trial court did not give the requested instructions, but charged

the jury that a blood–alcohol level of .10 percent may create an inference of intoxication. In light of our rejection of the contention that the percentage must be expressed in a "weight/weight" ratio, we find the trial court's charge proper.

■■■■■ The trial court entertained special requests by the appellant as required by Rule 30(a) of the Tennessee Rules of Criminal Procedure. The appellant now complains that the exact wording of the instructions was not provided to him before closing argument and that the court changed an instruction. First, Rule 30(a) does not require that the judge give the precise wording of his charge before the fact. It merely mandates that he inform the parties of his proposed action on special requests and portions of the instructions about which inquiries are made, which the judge did here. Further, the charge which the appellant now protests incorporated a portion of one of his own special requests; thus, he will not be heard to complain on appeal. We find no error here.

■■■■■ The appellant argues that the trial court erred in refusing to charge the lesser included offense of driving while intoxicated, T.C.A. § 55–10–401 (formerly § 59–1031). We agree that the better practice would have been to charge the lesser offense. However, since the evidence clearly made out the greater offense of vehicular homicide, there was no error. This issue is overruled.

■■■■■ We agree with the appellant that the court erred in instructing the jury that if the act causing the death was *malum in se*, it was unnecessary that the death be the natural and probable result of the criminal act. The vehicular homicide statute, T.C.A. § 39–2412, specifically requires that the death be "the proximate result of the driver's intoxication...." However, the court correctly charged all of the elements of vehicular homicide and included this instruction:

"[T]he State must have proven beyond a reasonable doubt...." as the proximate result of the defendant's alleged wrongful conduct the alleged victim, Elizabeth Cooper, died."

We feel that the jury was adequately informed that the State was obligated to prove that Mrs. Cooper's death was the proximate result of the appellant's drunk driving. Since there is no real dispute that Mrs. Cooper did indeed die because of the appellant's unlawful conduct, we find any error harmless.

■■■■ In his last issue, the appellant objects to the reference in the attorney general's closing argument to the injuries sustained by Mr. Cooper. Because testimony about those injuries was introduced, we find no error in the attorney general's remarks. This issue is overruled.

The judgment of the trial court is affirmed.

BYERS, J., and HOUSTON GODDARD, Special Judge, concur.