# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## SEPTEMBER 1998 SESSION

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9709-CC-00429 |
| | ) | |
| vs. | ) | Williamson County |
| | ) | |
| **VICTOR S. KELLY, JR.,** | ) | Hon. Henry Denmark Bell, Judge |
| | ) | |
| Appellant. | ) | (DUI) |

**FILED**

**January 19, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

FOR THE APPELLANT:

**DAVID BRANDON**
Attorney at Law
211 Third Ave. North
Nashville, TN  37219

**PETER D. HEIL**
Attorney at Law
P.O. Box 40651
Nashville, TN  37204

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH B. MARNEY**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**JOSEPH D. BAUGH**
District Attorney General

**LEE DRYER**
Asst. District Attorney General
P.O. Box 937
Franklin, TN  37065-0937

OPINION FILED:_____

AFFIRMED

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Victor S. Kelly, Jr., stands convicted of driving under the influence following a jury trial in the Williamson County Circuit Court. Kelly was sentenced to eleven months and 29 days supervised probation, with six months service in the county jail suspended after service of 48 hours. Terms of his sentence include revocation of his driver's license and attendance of alcohol safety school. He was fined $1,000. In this direct appeal, Kelly poses various challenges to the soundness of his conviction:

(1) Whether there was sufficient competent proof to establish, beyond a reasonable doubt, that he was under the influence of an intoxicant at the time he was driving his motor vehicle.

(2) Whether the trial court adequately instructed the jury on the permissible inference of intoxication which may be drawn from blood alcohol test results.

(3) Whether the trial court properly determined that the state met its burden of establishing an unbroken chain of custody for the defendant's blood sample.

(4) Whether the trial court committed plain error by admitting testimony of the TBI toxicologist regarding controlled sobriety test studies absent the witness having any underlying documentation with him at trial.

Having reviewed the record, studied the briefs of the parties and heard the oral arguments of counsel, we affirm the judgment of the trial court.

In the early morning hours of March 21, 1996, Trooper Richard Cash of the Tennessee Highway Patrol observed the defendant operating a motor vehicle at an excessive rate of speed on Interstate 65 in Williamson County. Trooper Cash clocked the defendant's speed at 90 miles per hour and initiated pursuit. After Trooper Cash stopped the defendant, he noticed the smell of alcohol coming from the defendant and his vehicle. The defendant was unsteady on his feet and admitted to having a martini and two other mixed drinks in the previous hour. The defendant performed poorly on field sobriety tests. Trooper Cash had no doubt in

2

his mind that the defendant was under the influence of alcohol. At 1:30 a.m., Trooper Cash placed the defendant under arrest for driving under the influence.

Trooper Cash transported the defendant to Williamson Medical Center, and at 2:10 a.m., John Marshall Osborne, a licensed laboratory technician, drew a blood sample from the defendant. Trooper Cash and Mr. Osborne filled out a form entitled "Alcohol/Toxicology Request" with the defendant's name, sex, race, date of birth, driver's license number, date and time of collection of the blood sample. Both Trooper Cash and Mr. Osborne signed the request form. Trooper Cash took the blood sample from Mr. Osborne and sealed it along with the request form in a test kit, which he mailed to the Tennessee Bureau of Investigation ("TBI").

The test kit was received at the TBI crime lab by Julie Fleak, an evidence technician. She followed standard procedures in opening the kit, putting identifying numbers on the sample vial, and placing the vial in a refrigerator. Ms. Fleak noticed that the vial did not have the defendant's name written on it, so she wrote his name on the vial. She then placed the sample in the refrigerator.

Special Agent John W. Harrison of the TBI, who is a toxicologist, retrieved the sample from the refrigerator and analyzed it using a scientific instrument used for that purpose. His analysis revealed that the blood alcohol content was .14 grams percent of ethyl alcohol. Special Agent Harrison explained that the TBI lab, which enjoys national accreditation, has stringent quality control standards which yield accurate blood alcohol analysis. The lab maintains a reliable chain of custody of an individual's blood sample.

Special Agent Harrison opined that an average, 150-pound individual

3

would need to consume four to six drinks[1] within 45 minutes to an hour and a half in order to achieve a blood alcohol content of .10 grams percent. A larger individual would require more alcohol to achieve the same blood alcohol content.[2] He further opined that the average individual's body can rid itself of .02 grams percent of alcoholic content from the blood in an hour.

## I

First, we consider whether the evidence is sufficient to sustain the defendant's conviction of driving under the influence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d

---

[1]Special Agent Harrison identified a "drink" as twelve ounces of beer, four ounces of wine or one ounce of 90 or 100 proof liquor.

[2]According to Trooper Cash, the defendant weighs 185 pounds.

4

856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

In pertinent part, driving under the influence is committed where an individual

> drive[s] or [is] in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of this state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while . . . [u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system . . . .

Tenn. Code Ann. § 55-10-401 (1993) (amended 1996).

The defendant contends the proof of his intoxication is insufficient based upon a vigorous attack on the reliability of the blood alcohol test result. We disagree. In the light most favorable to the state, the defendant admitted having a martini and two other mixed drinks. He was driving at a grossly excessive rate of speed on an interstate highway. When he was stopped by Officer Cash, he smelled of alcohol, was unsteady on his feet and did not perform field sobriety tests satisfactorily. The defendant was, as described by Officer Cash, "very intoxicated." All of this evidence is strong, probative evidence of the defendant's guilt beyond a reasonable doubt of driving under the influence. Cf., e.g., State v. Clinton Darrell Turner, No. 03C01-9604-CC-00151, slip op. at 2-6 (Tenn. Crim. App., Knoxville, July 9, 1997) (defendant properly convicted of DUI based upon evidence of slurred speech, unsteady gait, bloodshot eyes, smell of alcohol, driving without headlights at 1:30 a.m., performance on field sobriety tests, and admission of drinking). The fact that the defendant's blood alcohol content was .14 grams percent only 40

5

minutes after his arrest only further adds to the certainty of his guilt. Cf. State v. McKinney, 605 S.W.2d 842, 846 (Tenn. Crim. App. 1980) (jury properly inferred defendant's intoxication at time of offense from alcohol content of blood sample drawn approximately two and one-half hours after the offense).

## II

The defendant questions whether the trial court adequately instructed the jury on the permissible inference of intoxication which may be drawn from blood alcohol test results. The DUI statute as it existed at the time of the defendant's crime has been a source of grief for the courts of this state. See, e.g., State v. Gregory Steele, No. 01C01-9706-CC-00218 (Tenn. Crim. App., Nashville, Apr. 7, 1998), pet. for perm. app. filed (Tenn., June 6, 1998); State v. Charles Bourgeois, No. 01C01-9611-CR-00483 (Tenn. Crim. App., Nashville, Oct. 24, 1997); State v. Mark Spencer King, No. 01C01-9608-CR-00343 (Tenn. Crim. App., Nashville, Sept. 18, 1997). The statute as it existed on March 21, 1996 provided a conclusive presumption of intoxication and impairment upon a showing the blood alcohol content was .10 percent or greater. See Amendments, Tenn. Code Ann. § 55-10-408 (Supp. 1996). The statute in this form has been declared unconstitutional because it created a mandatory presumption, as opposed to a permissible inference. Mark Spencer King, slip op. at 2. During the effective period of this version of section 55-10-408, there was understandable confusion about the proper instruction to be given regarding the statutory presumption. See Bourgeois, slip op. at 4-7.

In the present case, the state during *voir dire* inquired of the jury, "Does everyone agree that if the state proves beyond a reasonable doubt that this defendant's blood alcohol content was over .10 that there is a presumption he's under the influence? Is there anyone here who can't apply that presumption?"

6

These inquiries met with objection by the defense, which was sustained by the trial court. The trial court then explained to the jury panel that although the statute called for a presumption to be drawn from a blood alcohol content of greater than .10, the correct terminology was inference, not presumption. The court told the jury panel that it would be instructed that if they found the defendant had a blood alcohol content of more than .10, they would be able to infer impairment without further proof, although it would be their prerogative whether to draw the inference from such evidence. The prosecution resumed *voir dire* and reaffirmed that the defendant is presumed innocent and that the state had the burden of proving guilt. When the defense began *voir dire*, counsel characterized the inference as a rebuttable presumption. The court corrected counsel, and explained to the jury panel that they may draw the inference of impairment based upon the blood alcohol content. Ultimately, the trial court properly instructed the jury at the close of proof that if it found the defendant's blood alcohol concentration was .10 or greater, it "may" infer that the defendant was under the influence of an intoxicant and that his ability to drive was impaired. Further, the jury was instructed that if it chose to make the inference, the inference is not conclusive and should be considered with all the evidence.

The trial court correctly stated the law in its instructions, and it adequately cured the misstatements of the state and the defense that occurred during *voir dire*. See U.S. Const. amend XIV, § 1 (due process requires that state prove every element of crime beyond a reasonable doubt); Francis v. Franklin, 471 U.S. 307, 105 S. Ct. 1965 (1985) (prosecution may not use evidentiary presumptions which are conclusive in nature or shift the burden of proof to the defendant); Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450 (1979); State v. Sensing, 843 S.W.2d 412, 417 (Tenn. 1992); cf. Bourgeois, slip op. at 6-7 (outlining proper jury instruction for offenses committed prior to 1996 amendment of § 55-10-

7

408).

### III

In his third issue, the defendant alleges that the state failed to meet its burden of establishing an unbroken chain of custody for the defendant's blood sample. The state is not required to establish the identity of a blood sample beyond all possible doubt. State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987) (citation omitted). Likewise, the state is not required to exclude all possibilities of tampering. Ferguson, 741 S.W.2d at 127. Rather, the state must show with reasonable assurance the identity of the evidence. Ferguson, 741 S.W.2d at 127. The sufficiency of proof regarding the chain of custody of physical evidence is a matter addressed to the sound discretion of the trial court which will not be overturned on appeal absent a clearly mistaken exercise of discretion. State v. Baldwin, 867 S.W.2d 358, 361 (Tenn. Crim. App. 1993) (citation omitted).

The defendant in the case *sub judice* claims the state failed to offer sufficient proof of the chain of custody of the defendant's blood sample. We are unpersuaded. The blood sample was drawn by Laboratory Technician Osborne and given to Trooper Cash. Mr. Osborne and Trooper Cash filled out an Alcohol/Toxicology Request form, then Cash mailed the sample and completed form to the TBI lab in a kit provided for that purpose. The kit was opened by Evidence Technician Fleak, who marked the vial of blood with the defendant's name and identifying numbers and then placed it in a refrigerator. The sample was later retrieved from the refrigerator by Special Agent Harrison, who analyzed the sample for blood alcohol content using standard TBI procedures. The procedure employed by Special Agent Harrison included measures to ensure that each test result was properly identified as belonging to the person who gave the sample.

8

We are firmly convinced of the completeness and reliability of the chain of custody established in this case. Accordingly, we find no merit in this issue.[3]

## IV

Finally, in an issue raised at oral argument but not in his brief, the defendant claims he was denied his constitutional right to confront the witnesses against him when the trial court admitted Special Agent Harrison's testimony regarding controlled sobriety test studies even though Harrison did not have any documentation regarding these studies available at trial for use in defense cross-examination. The defendant urges us to recognize this alleged shortcoming as plain error.

Special Agent Harrison testified during direct examination about controlled sobriety studies he had conducted. He explained that these studies were conducted by giving the test subjects measured quantities of alcohol, then observing their reactions and administering tests. These studies were conducted on individuals of both sexes and various races and weights. The studies also varied

---

[3]We are concerned, however, by the trial court's partial abdication of its role in determining the threshold admissibility of the evidence based upon a demonstration of a satisfactory chain of custody. The trial court admitted the evidence but instructed the jury that it should not accredit the toxicologist's testimony unless it found beyond a reasonable doubt that the blood sample was taken from the defendant. The question of whether the threshold requirement of a satisfactory chain of custody has been met is a matter for the sound discretion of the trial court, not a question of fact for the jury. See State v. Pamela Jean Rankins, No. 01C01-9602-CC-00052, slip op. at 6 (Tenn. Crim. App., Nashville, Feb. 26, 1998) (trial court did not err by not giving special instruction on chain of custody because such was an issue for sound discretion of trial court); State v. Willie Gene Ogburn, No. 01C01-9105-CR-00150, slip op. at 5 (Tenn. Crim. App., Nashville, May 13, 1992). In this case, the error is harmless because the evidence of record very clearly establishes a complete chain of custody. In the future, however, the trial court should determine in its discretion the admissibility of the proffered physical evidence based upon the chain of custody established by the proof; the court should refrain from giving a special instruction delegating this responsibility to the jury.

9

by when and where they were performed and how many subjects participated.  He gave specific information about the studies, including the number of participants and the identity of the individuals or groups involved with him in conducting the studies.

When an expert witness testifies about matters within his expertise, he may be required to divulge the underlying facts or data upon cross-examination. Tenn. R. Evid. 705.  Furthermore, an expert witness's credibility may be impeached by use of published treatises, periodicals or pamphlets.  Tenn. R. Evid. 618.

In the case under consideration, the witness explained the studies in detail.  He gave identifying information about the individuals or groups that participated with him in conducting the studies.  After explaining the procedures employed, he testified about the conclusions he drew from the results obtained. The defense had the opportunity to extract details about the "underlying facts or data" on cross-examination but chose not to do so.  See Tenn. R. Evid. 618.  The defense apparently sought the underlying information in written form, but there is no indication in the record that published documentation of these studies exists. See Tenn. R. Evid. 618, 705.  Moreover, we find no indication the defense was limited in its ability to impeach Special Agent Harrison from published treatises, pamphlets or periodicals which supported different conclusions than those to which he testified on direct examination.  See Tenn. R. Evid. 705.  Because the defense was in no way limited in its ability to cross-examine Special Agent Harrison, the claim that the defendant's right to confrontation was abridged must fail.

In sum, we affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

10

CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
THOMAS T. WOODALL, JUDGE