# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### JUNE SESSION, 1999

FILED

August 9, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 03C01-9812-CC-00422** |
| **Appellee** | ) | |
| | ) | **JEFFERSON COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. Ben W. Hooper, II, Judge** |
| **RICHARD A. GREEN,** | ) | |
| | ) | **(Vehicular Homicide)** |
| **Appellant** | ) | |

For the Appellant:

**Lu Ann Ballew**
Asst. Public Defender
P. O. Box 416
Dandridge, TN  37725

**Edward C. Miller**
Public Defender

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Marvin S. Blair, Jr.**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**Alfred C. Schmutzer, Jr.**
District Attorney General

**James L. Gass**
Asst. District Attorney General
Sevier County Courthouse
Sevierville, TN  37862

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Richard A. Green, was convicted by a jury of vehicular homicide by intoxication, a class B felony. Following a sentencing hearing, the Jefferson County Criminal Court imposed a ten year sentence of confinement. The appellant appeals both the judgment of conviction and resulting sentence entered by the trial court. In doing so, he challenges:

> I. The admission into evidence of the results of blood alcohol tests performed by both the Tennessee Bureau of Investigation and Jefferson Memorial Hospital;
>
> II. The expert testimony of Dr. John Zirkle regarding the combined effects of alcohol and drugs on an individual's ability to operate a motor vehicle;
>
> III. The testimony relating to the presence of alcoholic beverage containers found in the appellant's vehicle;
>
> IV. The imposition of a ten year sentence as being excessive; and
>
> V. The trial court's denial of a suspended sentence.

After review of the record and the applicable law, we find no error of law requiring reversal of the judgment or modification of the sentence. The judgment of the trial court is affirmed.

## Background

The proof introduced at trial, taken in the light most favorable to the State, reveals the following. On June 26, 1997, Richard Seymour picked up his wife, Margaret, from her place of employment at approximately 4:00 p.m. The couple drove to Wendy's in Jefferson City where they ate dinner. They then completed some grocery shopping at the nearby Wal-Mart. The couple then began their drive home on Highway 25/70. Upon approaching Kerr's Market, they noticed a vehicle coming towards them on the wrong side of the road. Margaret Seymour exclaimed,

2

"he's going to hit us." Richard Seymour stopped their Pontiac sedan in time to watch the approaching red Volvo "travel all the way across to the edge of the road." Richard Seymour thought that "[the appellant] was going into the cow pasture." However, the red Volvo veered back across to his side of the road. Mr. Seymour "took his foot off the brake and started his vehicle toward a big strip out on the edge of his side of the road." The Volvo again veered back across the road. Mr. Seymour stopped again. The Volvo "went back across" and collided with the passenger side of the Seymours' vehicle.

At approximately 6:30 p.m., members of the Tennessee Highway Patrol were dispatched to the scene of the crime. Troopers Bud Potts and Lloyd Smith discovered two vehicles at the scene, a cream color Pontiac sedan and a 1978 red Volvo. Trooper Smith approached the driver of the red Volvo, later identified as the appellant. Smith observed that the appellant "appeared to be very intoxicated. He was using a lot of profanity and not cooperating with the ambulance personnel at all. I attempted to question him . . . and he more or less. . . told me to go to hell." Trooper Smith added that the appellant "had a very strong odor of alcohol." Upon searching the appellant's vehicle, Trooper Smith discovered two empty beer bottles, "one of them had a little cup holder thing on it they put them in to keep them cool." A more thorough search was completed after the vehicle was towed from the scene. Trooper Smith later found "a total of twelve bottles, part of them empty and part of them full" and a "pack of rolling papers # 1.5."

The appellant, Richard Seymour, and Margaret Seymour were transported by ambulance to Jefferson Memorial Hospital. Margaret Seymour, the forty-five year old passenger of the Pontiac, was dead on arrival at the hospital. Efforts to revive her were futile.

Later on that evening, Trooper David Brown questioned the appellant at the Jefferson Memorial Hospital. Trooper Brown testified that the appellant "was very argumentative, very combative. You could tell by the odor that he had been drinking." "His speech was slurred, [he was] talking fast, [and he was] using very racy language." The appellant told Trooper Brown:

> . . .I just came back down the road and that God damned yellow station wagon was over on the other side of the road, man. I said, "God damn, they're going to hit me head on." And I cut over, man, to try to miss them, man, and they freaked out and cut back over anyway and it caught them in the side, man, and the next thing I knowed [sic] I was f- - - ing flipping.

During this interview, the appellant admitted that he had consumed approximately three beers prior to the collision. At some point during the appellant's stay at the hospital, officers discovered what was later determined to be 4.4 grams of marijuana concealed in the appellant's pants.

A blood sample was taken from the appellant at 8:12 p.m. This sample was subsequently sent to the Tennessee Bureau of Investigation where a blood alcohol analysis on the sample was conducted. The results of this test revealed that, at the time the sample was drawn, the appellant had a blood alcohol content of .13 mg/decaliter. The analysis by the TBI also revealed the presence of Valium in the appellant's system.

Hospital personnel subsequently drew another sample of the appellant's blood at 8:20 p.m. for diagnostic and treatment purposes. The tests on this sample revealed a blood alcohol content of .152 mg/decaliter. A urine test completed by the hospital additionally tested positive for benzodiazeprine (Valium) and for canabonoid, which is a metabolite of marijuana. At trial, Dr. John Zirkle, a physician at Jefferson Memorial Hospital, was called as an expert to testify as to the combined effects that alcohol and drugs would have upon an individual's ability to operate a motor vehicle. Dr. Zirkle did not treat the appellant at the hospital. He testified that a blood alcohol level of .152 is well above the standard considered to be intoxicated.

4

At this level, Dr. Zirkle opined that the appellant's "judgment and coordination would be impaired severely."

Trooper Roger Christian, an accident reconstructionist, provided additional testimony. Based upon the positions of the two vehicles after impact and certain marks, including tire marks, vehicle marks and gouges on the road surface, Trooper Christian determined that:

> [T]he Volvo was heading . . . in the direction of Knoxville, while the Pontiac was heading back to Newport/Dandridge. The Volvo, some 263 feet prior to striking the Pontiac, has traveled off onto the shoulder of the road.
> . . .
> It would have been on the shoulder of the road that the Pontiac was traveling. In other words, the Volvo had crossed over - - crossed the Pontiac's lane of travel, and had traveled off onto the shoulder approximately 263 feet before reaching the Pontiac, and it traveled down the shoulder of the roadway. In other words, it was completely on the other side of the highway.
> . . .
> . . .[T]he Volvo had come down on the wrong side, on the shoulder, was aggressively trying to return back into the road, and had struck the Pontiac on the Pontiac's passenger side.
> . . .
> [In the present case, the left front brake did not have an impact on the accident. Indeed, [w]hen he applied his brakes he should have went over in the right hand side instead of going to the left.

The appellant's acquaintance, Larry Stinnett, related the appellant's activities prior to the collision. Stinnett testified that, at sometime after 4:00 p.m., he and the appellant traveled to Andy's Market where they shot a game of pool and each drank two beers. They then drove to Newman Hollow Road where they met three unidentified men and smoked one marijuana cigarette. They went back to Andy's Market, the appellant "did donuts" in the parking lot, and then he drove to Green Hill Road. The appellant dropped Stinnett off at his sister's house near Kerr's Market on Highway 25/70. Stinnett testified that he saw the appellant with Valium tablets and that he saw the appellant drink a total of three beers.

5

The appellant testified that he had obtained the 1978 Volvo two days prior to the offense. At that time, he learned that the front left brake had been disconnected and the brake line plugged. He had attempted to have this condition corrected on the day of the offense; however, Bill Banks, the mechanic he visited, did not have the proper parts. The appellant admitted that he had drank three beers prior to the collision. He denied taking Valium prior to the collision although he did admit that he had "eaten ten Valium, two days before."

Based on this evidence, the jury found the appellant guilty of vehicular homicide.

## I. Admissibility of Blood Alcohol Tests

The appellant first complains that the admission into evidence of the results of the blood alcohol tests completed by the Tennessee Bureau of Investigation and Jefferson Memorial Hospital was error. He contends that, because both blood samples were drawn nearly two hours after the collision, the results of the blood tests "are not relevant to the issue of whether or not he was 'driving under the influence.'"

Relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See Tenn. R. Evid. 401. In the present case, the appellant was charged with vehicular homicide as the proximate result of the driver's intoxication. See Tenn. Code Ann. § 39-13-213(a)(2) (1997). Thus, evidence relating to the appellant's level of intoxication at the time of the offense is relevant in establishing an element of the offense. Indeed, the appellant's intoxication was the only disputed issue at trial.

6

Blood tests are routinely used to determine whether a person was intoxicated at a certain time. See NEIL P. COHEN, TENNESSEE LAW OF EVIDENCE § 401.25 (1995). Such tests are admissible provided that the sample was taken by a properly trained person and went through a proper chain of custody between the time the blood was drawn and the time it was analyzed. See generally Tenn. Code Ann. §§ 55-10-401 to -412 (1997); NEIL P. COHEN, TENNESSEE LAW OF EVIDENCE § 401.25. See also State v. Ben Jordan, No. 01C01-9311-CC-00419 (Tenn. Crim. App. at Nashville, Jun. 13, 1995), perm. to appeal denied, concurring in results only, (Tenn. Feb. 5, 1996). There is no dispute that the procedural prerequisites to admitting the laboratory test results were satisfied in the instant case.

Again, the collision resulting in the death of Margaret Seymour occurred at approximately 6:30 p.m. The blood sample drawn by the State was taken at 8:12 p.m. while the sample drawn by the hospital was taken at 8:20 p.m. No expert testimony was presented at trial to establish what the test results would have been at the time of the collision by means of extrapolation. As recognized by this court in State v. McKinney, "it would be virtually impossible for a sample of blood to be drawn until some time after the accident occurs." See State v. McKinney, 605 S.W.2d 842, 846 (Tenn. Crim. App. 1980). Accordingly, the jury can infer intoxication at the time of the offense from the results of a test of a blood sample taken later. See State v. Joe Larry Fuqua, No. 01C01-9312-CC-00431 (Tenn. Crim. App. at Nashville, Aug. 25, 1994), perm. to appeal denied, (Tenn. Nov. 7, 1994). Where there exists other evidence from which to infer the driver's intoxication, there is no need for expert witnesses to extrapolate the test results to the time of the driving. Id. In the present case, several law enforcement officers testified regarding the appellant's demeanor at the time of the offense, specifically, observing the appellant's belligerent behavior, excessive cursing, slurred speech and odor of alcohol. Additionally, Larry Stinnett testified that the appellant drank three beers and smoked part of a marijuana cigarette prior to the collision.

7

Accordingly, we reject the appellant's contention that a blood alcohol level of .13 is so close to the statutory presumption of .10 that expert testimony is required to establish the appellant's blood alcohol at the time of the collision. We conclude that the results of the blood alcohol tests were relevant to the appellant's state of intoxication. The interval between the time of the offense and the times at which the blood samples were drawn are pertinent to the weight of the evidence, not to its admissibility. See State v. Ben Jordan, No. 01C01-9311-CC-00419 (citing State v. Ford, 721 S.W.2d 828, 830 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1986); McKinney, 605 S.W.2d at 846 (parenthetical omitted)). This issue is without merit.

## II. Testimony of Dr. Zirkle

In a related issue, the appellant contends that the trial court erred by permitting Dr. John Zirkle to testify regarding the combined effects drugs and alcohol would have on a person's ability to operate a motor vehicle. Specifically, the appellant bases his argument on the grounds that

> Dr. Zirkle did not treat the appellant after the accident, nor did Dr. Zirkle obtain appellant's drug and urine samples, nor did he analyze appellant's samples for their alcohol and drug content. In short, Dr. Zirkle had no personal knowledge of appellant's statements for treatment, observations by hospital personnel, nor of the lab tests contained within the hospital records.

Accordingly, the appellant argues that Dr. Zirkle's testimony violates his constitutional right of confrontation.

Before calling Dr. John Zirkle to testify, the State offered into evidence, pursuant to Tenn. Code Ann. § 68-11-401 *et seq.* (1996) (Hospital Records as Evidence), the medical records of the appellant, Margaret Seymour, and Richard Seymour maintained by Jefferson Memorial Hospital relative to each patient's

8

respective treatment following the June 26th offense.  The trial court admitted the records after determining that the State had complied with the requirements of Tenn. Code Ann. § 68-11-401 *et seq.*  These statutes permit hearsay evidence, deny a party the right to cross-examine or otherwise refute the contents of the medical record, and allow opinion evidence of experts without showing their qualification to testify as an expert.  See  Sanders v. Nationwide Ins. Co., No. 02S01-9409-CV-00067 (Tenn. at Jackson, Jan. 22, 1996).  The principal purpose of Tenn. Code Ann. § 68-11-401 *et seq.* is to provide a procedure for a hospital, where it has no interest in the case, to respond to a subpoena duces tecum for hospital records by filing copies of the records authenticated by affidavit instead of by sending a witness to the hearing with the originals.  The copy of the record shall be admissible in evidence to the same extent as though the original thereof were offered and the custodian had been present and testified to the matters stated in the affidavit.  Tenn. Code Ann. § 68-11-406(a). The statutory requirements were satisfied; thus, procedurally, the records were admissible into evidence. Nonetheless, although authentication may, by statute, be satisfied by an affidavit by the custodian, the medical records are still subject to constitutional challenge.  See State v. Woody Hutchinson, C.C.A. No. 887 (Tenn. Crim. App. at Knoxville, Jul. 19, 1990).

In the instant case, the appellant, relying upon State v. Henderson, 554 S.W.2d 117, 120 (Tenn. 1977), contends that, by not having the person(s) who conducted the examination and who completed the laboratory tests available to testify, the introduction of these medical records into evidence violated his constitutional right to confrontation.  In Henderson, our supreme court held that out-of-court statements must meet certain criteria in order to satisfy the Confrontation Clause of both the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Tennessee Constitution.  See  State v. Armes, 607 S.W.2d 234, 236 (Tenn. 1980); Henderson, 554 S.W.2d 117 (Tenn. 1977).  Specifically, the court

9

recognized that valid claims of an unconstitutional abridgement of the right to confront witnesses arise when:

> (1) the hearsay evidence is crucial to proving the State's case, *i.e.*, the evidence is offered to prove an essential element of the crime or it connects the defendant directly to the commission of the crime;
>
> (2) there is no proof that the witness is unavailable, *i.e.*, the State must make a good faith effort to secure the presence of the person whose statement is to be offered against the defendant; and
>
> (3) the hearsay evidence is lacking its own indicia of reliability.

Henderson, 554 S.W.2d at 120.  See also  Armes, 607 S.W.2d at 237; State v. Oody, 823 S.W.2d 554 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1991); State v. Carpenter, 773 S.W.2d 1 (Tenn. Crim. App. 1989); State v. Arnold, 719 S.W.2d 543 (Tenn. Crim. App. 1986).  Cf.  Stewart v. Cowan, 528 F.2d 79 (6th Cir. 1976).

Notwithstanding the constraints imposed by the Henderson tripartite test, our supreme court has also recognized that "firmly rooted exceptions to the hearsay rule do not violate the Confrontation Clause."  See  State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986); see also  State v. Darrell R. Kennedy, No. 02C01-9708-CR-00318 (Tenn. Crim. App. at Jackson, Feb. 17, 1999), perm. to appeal denied, (Tenn. Jul. 19, 1999); State v. Harvey Phillips Hester, No. 03C01-9704-CR-00144 (Tenn. Crim. App. at Knoxville, June 4, 1998) (citing State v. Alley, No. 02C01-9405-CC-00100 (Tenn. Crim. App., at Jackson, June 18, 1997), perm. to appeal denied, (Tenn. Mar. 2, 1998); State v. Lillard, No. 01C01-9602-CC-00051 (Tenn. Crim. App. at Nashville, Feb. 12, 1997)).  The rationale for this principle is based upon the premise that some forms of admissible hearsay rest upon such solid foundations that admission of virtually any evidence within them comports with the right of confrontation. See  Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2537, 2539 (1980); Causby, 706 S.W.2d at 631 (Tennessee Supreme Court holds that former testimony hearsay exception is such firmly established rule and so inherently reliable that any

such evidence necessarily comports with the right of confrontation.).[1]  Indeed, statements admitted under a firmly rooted hearsay exception are so inherently trustworthy that adversarial testing would add little to their reliability.  See  State v. Darrell R. Kennedy, No. 02C01-9708-CR-00318.

Business records are admissible as an exception to the rule against the introduction of hearsay evidence.  See Tenn.  R. Evid. 803(6).  The courts of this state, our sister states, and many federal courts have held that the "business records" exception to the rule against hearsay is firmly established.  State v. Darrell R. Kennedy, No. 02C01-9708-CR-00318 at n.8;  State v. Harvey Phillip Hester, No. 03C01-9704-CR-00144.  See, e.g., United States v. Ismoila, 100 F.3d 380, 392 (5th Cir. 1996), cert. denied, -- U.S. --, 117 S.Ct. 1712 (1997); Minner v. Kerby, 30 F.3d 1311 (9th Cir. 1994)(introduction of chemist's notes through supervisor not violative of Confrontation Clause);  United States v. Norton, 867 F.2d 1354, 1363 (11th Cir. 1989); United States v. Baker, 855 F.2d 1353,1360 (8th Cir. 1988)(business records exception, is firmly rooted hearsay exception to prevent violation of Confrontation Clause); Reardon v. Manson, 806 F.2d  39 (2d Cir. 1986), cert. denied, 481 U.S. 1020, 107 S.Ct. 1903 (1987)(chemist report introduced through testimony of supervisor properly admitted sufficient indicia of reliability); People v. Vega, 639 N.Y.S.2d 511, 513-514 (A.D. 3 Dept. 1996) (introduction of technician's notes under business records exception rendered technician's testimony unnecessary where supervisor actually analyzed the samples); State v. Fontenette, No. 59014 (Ohio App. Sept. 19, 1991) (testimony by laboratory supervisor regarding DNA profile properly admitted under business records exception did not violate Confrontation Clause).

---

[1]In Causby, 706 S.W.2d at 631, the Tennessee Supreme Court held that the third prong of the Henderson-Armes requirement for complying with the confrontation clause, i.e., that the evidence not be crucial or devastating, is not required in the case of well established hearsay exception such as former testimony. Id. at 631, note 1 (citing Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308 (1972) and Ohio v. Roberts, 448 U.S. at 56, 100 S.Ct. at 2531).

A business record may be introduced by the custodian of those records or any other qualified witness. See State v. Baker, 842 S.W.2d 261, 264 (Tenn.Crim.App.1992). The custodian of the record to be introduced must be able to testify as to the identity of the record, the mode of preparation, and whether the record was made in the regular course of business at or near the time of the recorded event. Id. In the present case, the State failed to call the records custodian to testify as to the authenticity of the records; rather, the State relied on an affidavit completed by the custodian. See Tenn. Code Ann. § 68-11-406(a).

> During the course of the trial, defense counsel stated:
>
> I will not object, based on that affidavit, to the authenticity of the records, but as far as these records being entered as exhibits without hospital personnel such as a nurse who saw my client, or the person who drew the blood, of the lab technician -- you know, I've got to object to that because based on those grounds it would be hearsay.

We are unable to discern from this objection whether the appellant intended to concede or challenge the State's authentication of the medical records. Notwithstanding, we conclude that an affidavit of the records custodian, rather than his or her personal appearance in court, is insufficient authentication for purposes of satisfying the reliable hearsay exception to the Henderson requirements. See Douglas M. Varner v. Hon. W.L. Brown, No. 03A01-9405-CV-00171 (Tenn. App. at Knoxville, Nov. 30, 1994).

Thus, we return to the tripartite test announced in Henderson. In this regard, we find the evidence not violative of the appellant's right to confrontation. First, the evidence challenged is merely cumulative to evidence introduced by other witnesses of the State. Again, numerous officers testified as to the appellant's physical condition at the time of the collision. Additionally, the tests performed by the Tennessee Bureau of Investigation confirmed that the appellant had a blood alcohol content of .13, tested positive for Valium, and that the substance found on the appellant's person was marijuana. Next, the United States Supreme Court has held

that a demonstration of availability (part 2 of the <u>Henderson</u> test) is not always required. <u>Ohio v. Roberts</u>, 448 U.S. at 65, n. 7, 100 S.Ct. at 2538 n. 7; <u>Sherman v. Scott</u>, 62 F.3d 136, 140 (5th Cir. 1995). Indeed, in <u>White v. Illinois</u>, 502 U.S. 346, 354, 112 S.Ct. 736, 741 (1992), the Court held that <u>Ohio v. Roberts</u> stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry <u>only</u> when the challenged out-of-court statements were made in the course of a prior judicial proceeding. Accordingly, we need not address the availability requirement. And, finally, because the records are regularly maintained reports of the hospital with respect to its care and treatment of patients and because they were not prepared for the purpose of this litigation, the records evidence their own indicia of reliability. Accordingly, the evidence of the medical records do not violate the appellant's confrontation rights and were properly admitted.

We additionally find that introduction of Dr. Zirkle's testimony was proper. During pre-trial motions, the State asserted that Dr. Zirkle would testify as to the effect the combination of alcohol, Valium, and marijuana would have on a person's ability to drive a motor vehicle. Tenn. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Rule 703, Tenn. R. Evid., contemplates three possible sources from which an expert may base his/her opinion: (1) information actually perceived by the expert; (2) information made known to the expert by others; and (3) information reasonably relied upon by experts in the particular field.[2] <u>See</u> Tenn. R. Evid. 703; <u>see also</u> NEIL P. COHEN, ET. AL., TENNESSEE LAW OF EVIDENCE §§ 703.2, 703.3, 703.4 (3d ed. 1995). Clearly, Dr. Zirkle, even though he was not the appellant's attending

---

[2]Although we have determined that the medical reports are constitutionally admissible under an exception to the hearsay rule, Rule 703 does not prevent an expert from relying upon inadmissible hearsay in formulating an opinion, if the type of hearsay is one that would be reasonably relied upon by experts in that situation. <u>See</u> NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 703.4.

physician, was able to formulate an opinion as to the appellant's level of impairment based on the medical records prepared contemporaneously to the appellant's treatment at Jefferson Memorial Hospital. Again, the records were prepared in order to aid the treating physician in his treatment and diagnosis of the appellant; ergo, the records are presumed reliable and trustworthy. Moreover, since the doctor was available for cross-examination by the defense and he was thoroughly questioned, the appellant's right to confrontation was not infringed. This issue is without merit.

### III. Evidence of Alcoholic Beverage Containers

The appellant next argues that evidence of alcoholic beverage containers found within his vehicle was unreliable as well as irrelevant and should not have been admitted into evidence. Specifically, he contends that the evidence was unreliable in that the tow-in report completed at the accident site indicated that only one empty beer bottle was found. At trial, Trooper Smith testified that he found two empty beer bottles in the front seat of the car and twelve other beer bottles, both empty and full, in the back seat and trunk of the vehicle. Trooper Smith explained that the items on the tow-in report are not required by the Highway Patrol and are discretionary on the part of the attending officer. Moreover, at the time the tow-in report was completed, Trooper Smith had not searched the back seat or the trunk of the car because of the vehicle's position at the crime scene. The appellant contends that this discrepancy in addition to the State's failure to show that the appellant had consumed alcohol from any of these specific containers at any time prior to the offense was more prejudicial than probative and should have been excluded.

Initially, we note that the State maintains that, because defense counsel failed to make a contemporaneous objection to the testimony at trial, the issue has

been waived.  We cannot agree.  The appellant objected to the admission of the beer bottles in a pretrial motion to suppress.  The issue is properly preserved for appeal.

Again, evidence is deemed relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Tenn. R. Evid. 401.  Even though relevant, evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice. . . ."  Tenn. R. Evid. 403.

The issue before the jury was the appellant's state of impairment at the time of the collision which was dependant upon the quantity of alcohol consumed.  The presence of the beer bottles which were accessible to the appellant, *i.e.*, those in the front seat, was relevant in establishing an inference of the appellant's consumption of alcohol at the time of the collision.  However, we conclude that evidence and testimony relating to the presence of the twelve alcoholic beverage containers not readily accessible to him, *i.e.*, those found in the back seat and trunk compartment of the vehicle,  cannot be used to create an inference of consumption at or near the time of the offense, and are, thus, more prejudicial than probative.  Notwithstanding the court's error in admitting this evidence, any such error is harmless, especially in consideration of the appellant's admission that he had consumed alcohol prior to the offense and the other overwhelming proof relative to his intoxication presented at trial. See   Tenn. R. Crim. P. 52(a).

## IV.  Sentencing

In his final issue, the appellant challenges the trial court's imposition of a sentence of ten years in the Department of Correction.  Without any specific error

being assigned, the appellant, in a generalized statement, contends that he is entitled to an eight year sentence, and, after credit for time served, the remainder of his sentence should be suspended, or, in the alternative, he should be granted work release. In support of this argument, he asserts that he is employable as a roofer and that he is responsible for the support of his two children.

When the length, range, or manner of service of sentence is challenged on appeal, this court conducts a *de novo* review conditioned upon the presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d)(1997). This presumption only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the case before us, the trial court considered relevant sentencing principles; thus, the presumption applies. Moreover, this court may only modify sentence if the sentence is excessive or the manner of service is inappropriate. State v. Russell, 773 S.W.2d 913, 915 (Tenn. 1989). On appeal, the appellant bears the burden of showing that the sentence imposed was improper. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

The proof at the sentencing hearing revealed that the twenty-eight year old appellant is the non-custodial father of two minor children. The appellant refused to acknowledge that the collision was the result of his intoxication. He admits to smoking a "half nickel" of marijuana and drinking a twelve pack of beer a day. The appellant's work status with his most recent employer was not verified. Moreover, his previous employer indicated that "the [appellant] had worked very little for him. He stated that [the appellant] may work for a few hours and then he would not see him again for six months." Additionally, the appellant has a criminal history consisting of at least twenty-two separate violations of the law including, among others: two felony convictions for theft, three convictions for driving under the influence, two convictions for reckless driving, two convictions for possession of a

16

controlled substance, two convictions for driving on a suspended license, four convictions involving public intoxication, three convictions for reckless endangerment, and one conviction for assault. The record also indicates that the appellant had previously had a suspended sentence revoked and that, while in jail on the present charges, the appellant was arrested for simple possession of marijuana and drug paraphernalia while incarcerated in a penal facility.

In determining the appropriate sentence for the appellant's conviction of vehicular homicide, the trial court applied one enhancement factor, *i.e.*, that the appellant has a history of criminal behavior, but concluded that no mitigating factors were applicable.[3] See Tenn. Code Ann. § 40-35-114(1) (1997). The appellant's only challenge to the length of the sentence imposed by the trial court is that he should have received a sentence of eight years rather than a ten year sentence.

When there are enhancement factors and no mitigating factors, the trial court may set the sentence above the minimum within the applicable sentencing range, but still within the range. Tenn Code Ann. § 40-35-210(d)(1997). The appellant was convicted as a range I offender of a class B felony. Thus, the sentence range for the appellant's conviction is eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2) (1997). The court imposed a sentence of ten years. We find the length of this sentence justified and clearly not excessive under the guidelines of the 1989 Sentencing Act.

Additionally, the trial court denied any form of alternative sentence including probation. As the court imposed a sentence of ten years, which we have found to be justified, the appellant is not eligible for a sentence involving probation. Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, we conclude that a sentence of confinement is necessary to protect society by restraining a defendant who has a

---

[3]The appellant does not challenge the trial court's refusal to apply any mitigating factors.

long history of criminal conduct and because measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the appellant.  See  Tenn. Code Ann. §40-35-103(1)(A), -103(1)(C) (1997).  This contention is without merit.

## VI.  Conclusion

After a review of the record, we find no error requiring reversal.  The judgments of conviction and sentences entered by the trial court are affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

(See separate concurring opinion)
JOHN H. PEAY, Judge

_____
JOHN EVERETT WILLIAMS, Judge